**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **BREAKTIME HOUSTON LLC,**<br><br>Plaintiff<br><br>**v.**<br><br>**BREAKTIME CORNER MARKET, LLC, VAPE TIME STORES, LLC, and JOHN DOES 1-10,**<br><br>Defendants. | Case No. 4:26-CV-9701<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Breaktime Houston LLC ("Breaktime") brings this Complaint against Defendants Breaktime Corner Market, LLC, Vape Time Stores, LLC, and John Does 1-10 (collectively "BTCM") and alleges as follows:

## PRELIMINARY STATEMENT

1. This case concerns a deliberate trademark infringement campaign by a rapidly expanding convenience store conglomerate against a smaller, established Houston-area retailer that has operated under the federally registered BREAKTIME® word mark since 2017.

2. Plaintiff Breaktime Houston LLC ("Breaktime") owns two federal trademark registrations for the BREAKTIME® marks for retail convenience store and gasoline services, including an incontestable registration for the BREAKTIME® word mark. For nearly a decade, Breaktime has continuously operated convenience stores in the Houston market under the BREAKTIME® marks and has developed substantial goodwill and consumer recognition under this trademark:

3. Defendants Breaktime Corner Market, LLC and Vape Time Stores, LLC ("BTCM") are sophisticated operators of more than 300 convenience stores across multiple states, including dozens in the Houston area. Beginning in or around 2024, BTCM began rebranding certain Houston-area convenience stores under the confusingly similar BRAKETIME marks:

4. Despite actual knowledge of Breaktime's federally registered BREAKTIME® marks—and despite receiving a cease-and-desist letter before launch—BTCM proceeded with and expanded that rebranding effort for identical services in identical channels of trade.

5. In 2026, Breaktime learned that BTCM attempted to federally register the BRAKETIME marks. Not surprisingly, the United States Patent and Trademark Office refused registration because of a likelihood of confusion with Breaktime's registered BREAKTIME® marks.

6. BTCM nevertheless continued its infringing conduct. In at least one Houston-area location, BTCM has gone beyond colorable imitation and has directly reproduced and displayed Breaktime's actual federally registered BREAKTIME® composite logo itself at its gas station location at 5910 West Loop South, Bellaire, TX 77401 — passing off its location as affiliated with or operated by Breaktime. This is not merely confusingly similar branding; it is the unauthorized use of Breaktime's exact registered mark.

7. BTCM also intentionally co-brands its stores and certain of its online presence using the name "Breaktime Corner Market," creating additional confusion and diverting internet traffic intended for Breaktime.

8. Additionally, the Houston Chronicle and other news outlets very recently ran a series of articles indicating that BTCM's owners are responsible for the—initially unpermitted—demolition of the Kirby Mansion.[1] These same articles state that BTCM plans to construct an infringing BRAKETIME convenience store on the Kirby Mansion property. After the Chronicle ran a story linking BTCM to the Kirby Mansion demolition, Breaktime's owner immediately began receiving concerned phone calls from people asking if he was behind the destruction. BTCM's actions and the negative press pose a significant risk to BREAKTIME'S goodwill and reputation.

9. BTCM also allows gaming machines (so-called "eight-liners") in some of its convenience stores, such as at its BRAKETIME location at 9602 Southwest Freeway, Houston, TX 77074:






[1] *See, e.g.*, https://www.chron.com/news/houston-texas/article/omair-bashir-kirby-mansion-demolition-22507153.php; https://www.realtor.com/news/trends/houston-kirby-mansion-demolition-brake-time-convenience/; https://www.houstonpublicmedia.org/articles/history/2026/10/30/565693/houstons-historic-kirby-mansion-demolished-under-new-ownership/; https://www.reddit.com/r/houston/comments/1xk40qw/kirby_mansion_demolition_to_resume_after_permit/.

10. Gaming machines are something Breaktime prohibits and with which Breaktime does not want to be associated. BTCM's gaming activities, in conjunction with recent Houston-area law enforcement activity concerning eight-liner operations, pose a significant risk to Breaktime's reputation and goodwill.

11. BTCM's conduct creates both forward confusion and reverse confusion. Consumers are likely to mistakenly believe either that BTCM's stores are affiliated with Breaktime and/or its owners, or conversely that Breaktime's long-established stores and principals are affiliated with BTCM's rapidly expanding chain. Because BTCM's market presence and advertising footprint dwarf Breaktime's, BTCM's infringement threatens to overwhelm Breaktime's identity, goodwill, and control over its own marks.

12. Breaktime seeks immediate injunctive relief to prevent further consumer confusion and irreparable harm, as well as damages and exemplary damages for BTCM's willful and malicious conduct.

## PARTIES

13. Plaintiff Breaktime Houston LLC is a limited liability company organized under the laws of Texas, having its principal place of business at 1470 First Colony Blvd., Suite 100, Sugar Land, TX 77479.

14. Defendant Breaktime Corner Market, LLC is a limited liability company organized under the laws of Delaware, having its principal place of business at 6300 Richmond Ave., Suite 300, Houston TX 77057.

15. Defendant Vape Time Stores, LLC is a limited liability company organized under the laws of Delaware, having its principal place of business at 6300 Richmond Ave., Suite 300,

Houston TX 77057. Vape Time Stores, LLC is the named applicant in BTCM's federal trademark application Serial No. 99/426773 for BrakeTime .

16. Breaktime's investigation is ongoing and the true names or capacities, whether individual, corporate, or otherwise, of the defendants sued herein under the names "John Does 1-10," inclusive, are unknown and they are therefore sued herein as fictitious parties. Breaktime will amend this Complaint to show their true names and capacities if, and when, they are ascertained. This includes, but is not limited to, personal liability for all corporate officers, directors, employees, and agents authorizing, directing, and/or participating in the infringement alleged herein.

## JURISDICTION AND VENUE

17. This is an action for: (i) federal trademark infringement under 15 U.S.C. § 1114; (ii) unfair competition and false designation of origin under 15 U.S.C. § 1125(a); (iii) trademark infringement under Texas common law; and (iv) unfair competition under Texas common law.

18. This Court has original subject matter jurisdiction over Plaintiff's federal claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a). This Court has original jurisdiction over Plaintiff's unfair competition claims under 28 U.S.C. § 1338(b), as those claims are joined with substantial and related federal trademark claims. This Court has supplemental jurisdiction over Plaintiff's remaining state law claims under 28 U.S.C. § 1367(a), as all such claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

19. The Court has personal jurisdiction over BTCM because BTCM is engaged in substantial and regular business in the State of Texas and in this judicial district, including by operating its gas stations and convenience stores in the State of Texas and in this judicial district.

20. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because all Defendants are deemed to reside here pursuant to § 1391(c)(2) by virtue of maintaining their principal places of business in the Houston area of Texas. Venue is independently proper under § 1391(b)(2) because a substantial part of the events giving rise to this action occurred within this district, including Defendants' infringing use of its confusingly similar BRAKETIME Marks at multiple Houston-area locations, their display of Breaktime's actual registered mark at 5910 West Loop South, Bellaire, TX 77401, and the resulting consumer confusion and harm to Breaktime occurring here.

## FACTUAL BACKGROUND

### I. Breaktime's Well Known Marks

21. Breaktime has operated a successful, well-known chain of 9 gas stations and convenience stores in the Houston metropolitan area since 2017 under the BREAKTIME® Marks.

22. Breaktime's use of the BREAKTIME® Marks constitutes use in interstate commerce since at least 2017 in connection with retail convenience store and gasoline services.

23. Breaktime applied for a federal registration for the BREAKTIME® word mark on February 6, 2017, and the USPTO granted U.S. Registration No. 5,361,309 on December 19, 2017. A true and correct copy of the Certificate of Registration for the BREAKTIME® word mark is attached hereto as Exhibit 1.

24. The BREAKTIME® word mark is registered in International Class 35 for "Retail convenience stores; Retail store services featuring convenience store items and gasoline."

25. Breaktime timely filed its Declaration of Incontestability pursuant to 15 U.S.C. § 1065, and the registration for the BREAKTIME® word mark became incontestable in December 2022. There has been no final decision adverse to Breaktime's ownership or right to register the

BREAKTIME® word mark, and there is no proceeding involving said rights pending before the USPTO or any court. Accordingly, Breaktime's right to use the BREAKTIME® word mark is incontestable under 15 U.S.C. § 1065.

26. Breaktime applied for a federal registration for the BREAKTIME® composite mark on June 14, 2024, and the USPTO granted U.S. Registration No. 7,736,945 on March 25, 2025. A true and correct copy of the Certificate of Registration for the BREAKTIME® composite mark is attached hereto as Exhibit 2.

27. The BREAKTIME® composite mark is registered in International Class 35 for "Retail convenience stores; Retail store services featuring convenience store items and gasoline."

28. The BREAKTIME® composite mark contains the same dominant and salient word element — "Breaktime" — as Breaktime's federally registered and incontestable BREAKTIME® word mark. Because "Breaktime" is the most recognizable and salient element of both marks, BTCM cannot challenge the secondary meaning or distinctiveness of that element. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 606 (9th Cir. 2005). In other words, the conclusive presumption of secondary meaning arising from the incontestable BREAKTIME® word mark extends to the word "Breaktime" as the dominant element of both marks.

29. Through the continuous and uninterrupted use of the BREAKTIME® Marks since 2017, and the maintenance of high-quality standards, Breaktime's customers have come to recognize the BREAKTIME® Marks as an indication of origin. As a result, Breaktime has established substantial and valuable goodwill in the Houston market and surrounding regions.

## II. BTCM Is a Sophisticated Infringer

30. BTCM was founded in 2004 and bought its first Houston-area convenience store as far back as 1999. Despite years of operating in the same Houston market as Breaktime, BTCM

chose to rebrand its stores, on information and belief, in 2024 under marks that are virtually identical to Breaktime's federally registered BREAKTIME® Marks.

31. BTCM is co-owned by sophisticated and self-described "real estate tycoon" and "visionary leader" Usman Bashir and his brother, Omair Bashir. On information and widely reported belief, in addition to owning BTCM, the Bashir’s own several shopping centers, hotels, office buildings, and other properties across both Pakistan and the U.S., and have an estimated net worth in excess of $700 million. Mr. Usman Bashir is also a celebrity investor on Pakistan's popular TV show Shark Tank.[2]

32. BTCM expanded rapidly through a series of acquisitions: approximately 20 convenience stores in 2018, 40 additional stores in 2020, 48 CEFCO convenience stores from former parent Fikes Wholesale in mid-2022, and 62 sites from EG America in 2024. BTCM now operates over 300 convenience stores across Texas, Illinois, Kansas, Minnesota, and Montana, including 116 stores in Texas and 45 in the Houston area.

33. According to Mr. Usman Bashir, BTCM has ambitions to reach 1,000 BrakeTime stores across the U.S. in the future. "Our plan and goal is to keep expanding, and the sky is the limit," he said. "How much we will be able to grow, that's something time will tell."[3]

34. BTCM's rapid rise has made it one of the fastest-growing mid-size convenience retailers in the industry. As a sophisticated enterprise co-owned by businessmen with $700 million and presumably intellectual property experience, BTCM understood the value of trademark rights — and chose to disregard Breaktime's.

---

[2] https://www.cstoredive.com/news/braketime-corner-market-c-store-usman-bashir-shark-tank/758234/.
[3] *Id.*

## III. Description and Similarity of the Marks

35. Under 15 U.S.C. § 1114(1)(a), trademark infringement includes the use in commerce of a 'colorable imitation' of a registered mark in connection with the sale or advertising of goods or services where such use is likely to cause confusion, mistake, or deception. A colorable imitation need not be identical to the registered mark; it is sufficient that the marks are similar in appearance, sound, meaning, and overall commercial impression such that ordinary consumers exercising ordinary care would likely be confused as to the source or affiliation of the goods or services.

36. Plaintiff's BREAKTIME® composite mark (left) and Defendant's BRAKETIME composite mark (right) are shown side-by-side below:

37. The BREAKTIME® composite mark features the following distinctive characteristics: (a) the dominant word "Breaktime" rendered in bold italic lettering in a distinctive two-tone color scheme — the letters "Break" in green and the letters "time" in blue; (b) a stylized blue clock/starburst design element integrated into the mark at the position of the letter "k," consisting of radiating dashes arranged in a circular pattern suggesting a clock face; and (c) a combined green-and-blue commercial impression that is distinctive and immediately recognizable. Breaktime's store facades further reinforce this distinctive two-tone identity through a prominent blue accent band above the entrance alongside the green-and-blue composite mark.

38. BTCM's BRAKETIME mark — as depicted in its USPTO application, which was rejected on March 5, 2026 — consists of the phonetically identical word "BrakeTime" rendered as two words in bold italic lettering in a two-tone green color scheme: the letters “B” and “T” and the

swoosh/checkmark design element at the position of the letter “k” appear in a slightly darker shade of green, while the remaining letters “rake” and “ime” appear in a slightly lighter shade of green. BTCM does not hold a federal registration for the BRAKETIME mark — its application was refused by the USPTO based on likelihood of confusion with Breaktime's registered BREAKTIME® marks. Exhibit 3. BTCM abandoned its application without contesting the USPTO’s likelihood-of-confusion determination. Exhibit 4. BTCM’s failure to challenge the USPTO’s finding further supports the conclusion that BTCM’s use of its mark is likely to cause consumer confusion and that BTCM knows as much.

39. As displayed on many of BTCM's actual store facades in commercial use, the BRAKETIME signage employs a more pronounced version of the two-tone color treatment seen in its USPTO application. Specifically, in actual store use, the letters "B" and "T" and the swoosh design element at the "k" position appear in a very dark green — more visually distinct from the lighter bright green used for the remaining letters "rake" and "ime" than in the applied mark — creating a stronger two-tone color contrast that more closely approximates the two-tone green-and-blue treatment of Breaktime's registered BREAKTIME® composite mark. In both marks, the same structural elements carry the darker/contrasting color: the first letter, the design element at the "k," and the first letter of the second word.

40. A side-by-side comparison of Breaktime's store facade (left) and BTCM's store facade (right) further illustrates the striking similarity in overall commercial impression as encountered by consumers in the marketplace:







41. The marks are colorable imitations of one another for the following reasons:

a **Sound:** "Breaktime" and "BrakeTime" are phonetic equivalents — they are pronounced identically by consumers. The USPTO confirmed this in its March 5, 2026 Office Action, concluding that the marks "are phonetic equivalents and thus sound similar" (*See* Exhibit 3).

b **Appearance:** Both marks use bold italic lettering of similar weight and proportion to spell out what is essentially the same word. Both marks incorporate a stylized design element in the same structural position within the word — at the "k." Both marks are displayed as large-format signage centered prominently above the store entrance on light-colored building facades. The dominant visual impression of both marks is a bold italic word with a stylized design element at the "k" position.

c **Color and Two-Tone Treatment:** Both marks employ a two-tone color treatment in which the same structural elements — the first letter, the design element at the "k," and the first letter of the second word — carry a contrasting color or tone from the remaining letters. In Breaktime's BREAKTIME® composite mark, "Break" is green, the starburst is blue, and "time" is blue. In BTCM's BRAKETIME mark as used in commerce, "B" and "T" and the swoosh are in very dark green while "rake" and "ime" are in lighter bright green. The

shared structural approach of applying contrasting colors to the same positions within the same phonetically identical word creates a strikingly similar visual rhythm and commercial impression.

d **Connotation and Commercial Impression:** Both marks convey the same meaning and commercial impression — a "break" and "time" concept in the context of a convenience store and fuel stop. The USPTO found that "the dominant word portions of the marks are nearly identical in appearance, sound, connotation, and commercial impression." The design element at the "k" position in both marks — a starburst in Breaktime's mark and a swoosh in BTCM's mark — further reinforces the shared commercial impression of motion, energy, and convenience.

e **Services and Channels of Trade:** Both marks are used in connection with identical services — retail convenience store and gasoline services — sold through identical channels of trade to the same consumers in overlapping geographic markets, including dozens of directly competing locations in the Houston metropolitan area.

## IV. The USPTO Refused Registration of the BRAKETIME Marks Because of a Likelihood of Confusion

42. On October 2, 2025, BTCM applied to the USPTO for registration of the BRAKETIME composite mark, claiming a first use in commerce of May 31, 2024. Specifically, in Application Serial No. 99/426773, BTCM, through Vape Time Stores LLC, sought registration on the Principal Register for goods described as "Retail store services featuring convenience store items and gasoline" in IC 35.

43. The USPTO rejected BTCM's trademark application on March 5, 2026 because of a likelihood of confusion with Plaintiff's BREAKTIME® Marks. A true and correct copy of the Office Action is attached hereto as Exhibit 3.

44. In its rejection, the USPTO made several key factual findings concerning the parties and their marks: (1) the marks are phonetic equivalents and thus sound similar; (2) the dominant word portions of the marks are nearly identical in appearance, sound, connotation, and commercial impression; (3) the addition of a design element does not obviate the similarity of the marks; and (4) the respective goods and/or services are identical with respect to retail store services featuring convenience store items and gasoline. *See* Exhibit 3 at 2.

45. BTCM abandoned its application without responding to the Office Action or contesting the examining attorney's likelihood-of-confusion determination. Exhibit 4. Although BTCM's abandonment is not a formal admission of infringement, its failure to challenge the USPTO's finding further supports the conclusion that BTCM's use is likely to cause consumer confusion. Moreover, BTCM's continued business expansion after the USPTO's refusal and the likelihood of confusion it identified, demonstrates, at best, a willful and reckless disregard for and indifference to Breaktime's trademark rights.

46. The USPTO's rejection constitutes an independent, third-party administrative finding of likelihood of confusion between the BREAKTIME® Marks and the BRAKETIME Marks — made before this action was filed.

## V. BTCM Willfully Infringed Despite Actual Notice of the BREAKTIME® Marks

47. Breaktime's attorneys sent BTCM a cease-and-desist letter on May 24, 2024, based on information then obtained from BTCM's website https://btcmstores.com/. A true and correct copy of this letter is attached hereto as Exhibit 5.

48. As stated in BTCM's own USPTO trademark application, BTCM first used the BRAKETIME Marks in commerce on May 31, 2024 — after receipt of Breaktime's cease-and-

desist letter. BTCM therefore had actual notice of the BREAKTIME® Marks and Breaktime's allegation of likelihood of confusion prior to its commercial launch.

49. BTCM had ample opportunity to select a different, non-infringing mark, or to negotiate a resolution to this dispute before launching commercially.

50. BTCM was undeterred. Despite its actual knowledge of the BREAKTIME® Marks and Breaktime's allegation of likelihood of confusion, BTCM consciously proceeded with the commercial launch of its confusingly similar BRAKETIME Marks on May 31, 2024.

51. BTCM's decision to launch the BRAKETIME Marks after receiving Breaktime's cease-and-desist letter, and its continued expansion of the infringing marks after the USPTO's March 5, 2026 rejection, demonstrates a willful and reckless disregard for and indifference to Breaktime's trademark rights.

### VI. BTCM's Direct Reproduction and Passing Off of Breaktime's Registered Composite Mark at the Bellaire Location

52. In addition to its use of colorable imitations of the BREAKTIME® Marks across its 300+ store network, BTCM has committed a distinct act of infringement at its gas station location at 5910 West Loop South, Bellaire, TX 77401.

53. At the Bellaire location, BTCM has directly reproduced and displayed Breaktime's actual federally registered BREAKTIME® composite mark — not a colorable imitation, but the actual composite mark — on its gas station price signage, as depicted below:




54. BTCM's display of Breaktime's actual registered composite mark at the Bellaire location constitutes passing off — the deliberate representation to consumers that the Bellaire location is owned by, operated by, affiliated with, sponsored by, or otherwise approved by Breaktime. This is not a naming dispute. It is the unauthorized appropriation of Breaktime's exact registered mark for BTCM's commercial benefit.

55. At the time of this display, BTCM had already received Breaktime's cease-and-desist letter and was aware of Breaktime's federally registered BREAKTIME® composite mark. As such, BTCM's reproduction of Breaktime's actual registered mark at the Bellaire location was committed with actual knowledge that such reproduction would cause confusion, mistake, or deception among consumers — satisfying the knowledge requirement of 15 U.S.C. § 1114(1)(b).

## VII. There is a Likelihood of Forward and Reverse Confusion

56. As recognized by the USPTO, BTCM's BRAKETIME unregistered marks are likely to cause consumer confusion with the federally registered BREAKTIME® Marks because the marks and the goods and services are virtually identical.



HOU 10032271.1

57. The Fifth Circuit's "digits of confusion" test demonstrates the high likelihood of confusion. Each digit weighs in Breaktime's favor:

a The BREAKTIME® Marks are strong, both inherently and commercially, by virtue of their distinctiveness, federal registration, and the word mark's incontestable status;

b The BREAKTIME® Marks and the BRAKETIME Marks are nearly identical in appearance, sound, connotation, and commercial impression, as recognized by the USPTO;

c The respective services are identical — retail store services featuring convenience store items and gasoline;

d Both parties sell through identical channels of trade — brick-and-mortar convenience stores and gas stations;

e Both parties sell their respective services using overlapping marketing media, including signage, websites, and social media;

f BTCM had actual notice of the BREAKTIME® Marks before its commercial launch and appears to have intended to create confusion through, *inter alia*, the deliberate use of its corporate name "Breaktime Corner Market", co-branding with its infringing mark, co-branding the corporate name with online media, and its passing off of Breaktime's actual composite mark;

g Breaktime received numerous phone calls immediately following the November 3, 2026, news that BTCM is associated with the controversial demolition of the Kirby Mansion, demonstrating evidence of actual reverse confusion. In any event, Breaktime intends to conduct a consumer survey to corroborate this evidence—although the absence of survey evidence does not weigh against a finding of likelihood of confusion given the strength of the remaining factors and the USPTO's own finding of likelihood of confusion; and

h Non-sophisticated consumers purchasing relatively low-cost convenience store items and gasoline exercise minimal care in selecting a retail location, favoring a finding of likelihood of confusion.

58. BTCM's use of the BRAKETIME Marks is likely to cause reverse confusion — meaning consumers are likely to falsely believe that Breaktime, the senior user of the BREAKTIME® Marks, is associated with or affiliated with the much larger junior user BTCM. Reverse confusion is actionable to protect the smaller senior user from losing control over its identity in the rising tide of publicity associated with the larger junior user. Because BTCM's market presence and advertising footprint dwarf Breaktime's, BTCM's market saturation threatens to overwhelm Breaktime's identity, goodwill, and ability to move into new markets.

59. BTCM's conduct also creates forward confusion — meaning consumers interacting with BTCM are likely to be confused into believing that Breaktime is the source, sponsor, or approver of BTCM's goods and services offered under the infringing BRAKETIME Marks.

**VIII. BTCM's Internet Co-Branding as False Designation of Origin**

60. To further compound consumer confusion, BTCM deliberately co-brands its BrakeTime stores and online presence using the corporate name "Breaktime Corner Market" on its Linkedin social media platform[4] and previously used the same name on its website.

61. Notably, BTCM did not use its own stylized "BrakeTime" spelling in its legal name or the co-branded space. Instead, BTCM adopted the exact spelling of Breaktime's registered mark — "Breaktime" — in the name "Breaktime Corner Market." By using Breaktime's exact spelling rather than its own "BrakeTime" variant, BTCM chose to present itself to online consumers using language that is identical to Breaktime's federally registered BREAKTIME® word mark —

[4] https://www.linkedin.com/company/breaktime-corner-marekt-llc (sic).

maximizing the likelihood that consumers searching for Breaktime online will be directed to BTCM's digital properties instead.

62. BTCM's use of "Breaktime Corner Market" as a consumer-facing trade name in its digital presence constitutes a false designation of origin under 15 U.S.C. § 1125(a). This conduct is designed to and does divert internet traffic intended for Breaktime, mislead consumers as to the source and affiliation of BTCM's goods and services, and trade on the goodwill Breaktime has built in the BREAKTIME® Marks.

63. BTCM's internet co-branding as "Breaktime Corner Market" creates additional and independent consumer confusion beyond the physical store mark infringement — reaching consumers who search for Breaktime online and are instead directed to BTCM's digital properties, further eroding Breaktime's ability to control its own brand identity and online presence.

**COUNT I**
**Federal Trademark Infringement**
**(15 U.S.C. § 1114(1)(a))**

64. Breaktime incorporates by reference as if fully restated herein the allegations of the preceding paragraphs.

65. Breaktime is the owner of U.S. Registration No. 5,361,309 for the BREAKTIME® word mark, which has become incontestable pursuant to 15 U.S.C. § 1065, and U.S. Registration No. 7,736,945 for the BREAKTIME® composite mark, both registered on the Principal Register of the USPTO for retail convenience store and gasoline services in International Class 35.

66. The BREAKTIME® Marks have been in continuous and uninterrupted use in interstate commerce by Breaktime since at least 2017 in connection with retail convenience store and gasoline services in the Houston, Texas metropolitan area and surrounding regions.

67. Without Breaktime's permission or authorization, BTCM knowingly used and continues to use in commerce colorable imitations of the BREAKTIME® Marks — namely the

BRAKETIME word mark and composite mark — in connection with retail convenience store and gasoline services that BTCM promotes, advertises, offers for sale, and sells across Texas and multiple other states, in violation of 15 U.S.C. § 1114(1)(a).

68. BTCM's unauthorized use of colorable imitations of the BREAKTIME® Marks has caused and is likely to cause forward confusion — creating the false and misleading impression that BTCM's goods and services are produced, distributed, sponsored, endorsed, or approved by Breaktime, or are otherwise associated or connected with Breaktime.

69. Additionally and/or alternatively, BTCM's use of colorable imitations of the BREAKTIME® Marks has caused and is likely to cause reverse confusion — creating the false and misleading impression that Breaktime's goods and services are produced, distributed, sponsored, endorsed, or approved by BTCM, or are otherwise associated or connected with BTCM.

70. BTCM's use of the BRAKETIME Marks constitutes infringement of Breaktime's federally registered BREAKTIME® Marks through colorable imitation in violation of 15 U.S.C. § 1114(1)(a). As recognized by the USPTO in its March 5, 2026 Office Action rejecting BTCM's trademark application, the marks are phonetic equivalents, nearly identical in appearance, sound, connotation, and commercial impression, and are used in connection with identical services.

71. BTCM's infringing activities are causing and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception among members of the public, and will continue to injure Breaktime's goodwill and reputation as embodied in the BREAKTIME® Marks. Because BTCM's infringement is ongoing and accelerating — with BTCM operating over 300 stores and publicly declaring ambitions to reach 1,000 BrakeTime locations — monetary damages alone cannot adequately compensate Breaktime for the continuing and escalating harm to its brand

identity, goodwill, and ability to control its reputation and expand into new markets. Breaktime therefore has no adequate remedy at law.

72. BTCM's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the BREAKTIME® Marks.

73. BTCM has profited and continues to profit from its infringement by diverting customers and business away from Breaktime. Breaktime has suffered and continues to suffer damages including lost profits, loss of goodwill, loss of control over its brand identity, diversion of internet traffic and customers, and costs of corrective advertising necessitated by BTCM's infringing conduct.

74. Based on BTCM's willful and intentional infringement, Breaktime is entitled to injunctive relief under 15 U.S.C. § 1116, and to recover: (1) BTCM's profits; (2) all damages sustained by Breaktime; (3) the costs of this action; and (4) enhanced damages of up to three times the amount of actual damages pursuant to 15 U.S.C. § 1117(a) based on BTCM's willful infringement. Breaktime further seeks an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) based on the exceptional nature of BTCM's willful conduct.

**COUNT II**
**Federal Trademark Infringement — Direct Reproduction and Passing Off**
**16 U.S.C. § 1114(1)(b))**

75. Breaktime incorporates by reference as if fully restated herein the allegations of the preceding paragraphs.

76. In addition to BTCM's use of colorable imitations of the BREAKTIME® Marks as set forth in Count I, BTCM has committed a distinct and egregious act of infringement by directly reproducing and displaying Breaktime's actual federally registered BREAKTIME® composite

mark — not a colorable imitation, but the actual mark — on its gas station price signage at 5910 West Loop South, Bellaire, TX 77401, without Breaktime's permission or authorization.

77. BTCM's display of Breaktime's actual registered composite mark at the Bellaire location is a direct reproduction of Breaktime's federally registered mark applied to signs and advertising at a commercial retail location, in connection with the sale and offering for sale of convenience store items and gasoline, in violation of 15 U.S.C. § 1114(1)(b).

78. BTCM committed these acts with actual knowledge that such reproduction and display of Breaktime's registered mark was would cause confusion, mistake, or deception among consumers as to the source, origin, affiliation, sponsorship, or approval of BTCM's goods and services at the Bellaire location — satisfying the scienter requirement of 15 U.S.C. § 1114(1)(b) for recovery of profits and damages.

79. BTCM's conduct at the Bellaire location constitutes passing off — the deliberate representation to consumers that the Bellaire location is owned by, operated by, affiliated with, sponsored by, or otherwise approved by Breaktime. This conduct goes beyond ordinary trademark infringement and represents an intentional appropriation of Breaktime's actual registered mark for BTCM's commercial benefit.

80. BTCM's conduct at the Bellaire location is causing and, unless enjoined by this Court, will continue to cause irreparable harm to Breaktime, including:

a Immediate and direct consumer confusion at the Bellaire location and in the surrounding Houston market;

b Erosion of Breaktime's ability to control the quality and reputation of goods and services offered under its registered mark;

c Loss of Breaktime's exclusive right to identify itself as the source of goods and services under the BREAKTIME® composite mark; and

d Damage to Breaktime's goodwill and business reputation in the Houston market where both parties operate.

81. Money damages alone cannot adequately compensate Breaktime for these harms, for which Breaktime has no adequate remedy at law.

82. BTCM's reproduction and display of Breaktime's actual registered mark at the Bellaire location demonstrates an intentional, willful, and malicious intent to trade on Breaktime's goodwill and to pass off BTCM's goods and services as those of Breaktime.

83. As a direct and proximate result of BTCM's conduct at the Bellaire location, and in addition to the irreparable harms identified above, Breaktime has suffered and continues to suffer damages including:

a Lost customers and revenue diverted to the Bellaire location by consumers confused into believing it is affiliated with Breaktime;

b Damage to Breaktime's goodwill and reputation resulting from consumers' experiences at a BTCM-operated location they believed to be affiliated with Breaktime;

c Loss of control over Breaktime's brand identity and registered marks in the Houston market; and

d Costs of corrective advertising and other remedial measures.

84. Based on BTCM's willful and knowing reproduction of Breaktime's actual registered mark in violation of 15 U.S.C. § 1114(1)(b), Breaktime is entitled to injunctive relief under 15 U.S.C. § 1116, including an order requiring BTCM to immediately remove all reproductions of the BREAKTIME® composite mark from the Bellaire location and any other

location where such reproduction has occurred. To the extent BTCM's direct reproduction of Breaktime's registered mark constitutes use of a counterfeit mark as defined under 15 U.S.C. § 1116(d), Breaktime seeks mandatory treble damages pursuant to 15 U.S.C. § 1117(b), together with prejudgment interest and reasonable attorneys' fees. In the alternative, Breaktime is entitled to: (1) BTCM's profits derived from the Bellaire location; (2) all damages sustained by Breaktime; (3) the costs of this action; and (4) enhanced damages of up to three times actual damages pursuant to 15 U.S.C. § 1117(a).

**COUNT III**
**Unfair Competition and False Designation of Origin**
**(15 U.S.C. § 1125(a))**

85. Breaktime incorporates by reference as if fully restated herein the allegations of the preceding paragraphs, including the infringement alleged in Counts I and II.

86. The BREAKTIME® Marks have acquired distinctiveness and enjoy secondary meaning among consumers in the Houston metropolitan area and throughout Texas, identifying Breaktime as the source of retail convenience store and gasoline services. The BREAKTIME® federal registration's incontestable status conclusively establishes this secondary meaning and distinctiveness.

87. BTCM has knowingly used and continues to use in interstate commerce, without Breaktime's permission or authorization, the BREAKTIME® Marks and/or confusingly similar marks — including the BRAKETIME word mark, the BRAKETIME composite mark, and the name "Breaktime Corner Market" — in connection with goods and services that BTCM promotes, advertises, offers for sale, and sells throughout the United States, in violation of 15 U.S.C. § 1125(a)(1)(A).

88. In its online and corporate co-branding, BTCM has not always used its own stylized "BrakeTime" spelling. Instead, BTCM adopted the exact spelling of Breaktime's registered mark — "Breaktime" — in the name "Breaktime Corner Market." By using Breaktime's exact registered spelling as both its actual corporate name and in certain of its digital presences while using the variant "BrakeTime" spelling on its physical store signage, BTCM demonstrates full awareness of Breaktime's registered mark, indicating a calculated choice to present itself to online consumers using language similar and sometimes identical to Breaktime's federally registered BREAKTIME® word mark — maximizing the diversion of internet traffic intended for Breaktime to BTCM's digital properties.

89. BTCM's false designations of origin and false representations include:

a Operating over 300 retail convenience stores and gas stations under the BRAKETIME Marks, which are confusingly similar to the BREAKTIME® Marks;

b Deliberately co-branding its BrakeTime stores with the corporate name "Breaktime Corner Market" — using Breaktime's exact registered spelling — on its website and certain social media platforms to intentionally divert internet traffic away from Breaktime and create consumer confusion as to the source, affiliation, and sponsorship of BTCM's goods and services; and

c Reproducing and displaying Breaktime's actual registered BREAKTIME® composite mark at its Bellaire, Texas location as alleged in Count II.

90. BTCM's conduct has caused and is likely to cause reverse confusion — creating the false and misleading impression that Breaktime's goods and services are produced by, distributed by, associated with, connected with, sponsored by, endorsed by, or approved by BTCM. Because BTCM is vastly larger than Breaktime and is rapidly saturating the Houston market and

beyond with its confusingly similar marks, consumers are likely to falsely believe that Breaktime — the senior user — is the junior party or is somehow derived from or affiliated with BTCM.

91. And now, BTCM is gaining negative attention for Breaktime through its unauthorized and unpopular destruction of the Kirby Mansion which resulted in multiple negative news articles.

92. Additionally, the gaming machines BTCM allows create an impression with which Breaktime does not want to be associated.

93. Additionally and/or alternatively, BTCM's conduct has caused and is likely to cause forward confusion — creating the false and misleading impression that BTCM's goods and services are produced by, distributed by, associated with, connected with, sponsored by, endorsed by, or approved by Breaktime.

94. BTCM's deliberate co-branding of "Breaktime Corner Market" — using Breaktime's exact registered spelling — on its website and certain social media constitutes an independent basis for liability under § 1125(a) as a false designation of origin and false representation designed to:

a Divert internet traffic from Breaktime in bad faith by using Breaktime's exact registered mark spelling as a trade name;

b Mislead consumers as to the source and affiliation of BTCM's commercial activities; and

c Trade on the goodwill and recognition of the BREAKTIME® Marks in the digital marketplace.

95. BTCM has made false representations, false descriptions, and false designations of origin on and in connection with its goods and services in violation of 15 U.S.C. § 1125(a). BTCM's activities have caused and, unless enjoined by this Court, will continue to cause likelihood

of confusion and deception among members of the public, and will continue to injure Breaktime's goodwill and reputation as embodied in the BREAKTIME® Marks. Because BTCM's conduct is ongoing and expanding, money damages alone cannot adequately compensate Breaktime for the continuing harm to its brand identity, goodwill, and market position, for which Breaktime has no adequate remedy at law.

96. As set forth above in Counts I and II, BTCM's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the BREAKTIME® Marks.

97. As a direct and proximate result of BTCM's conduct, Breaktime has suffered and continues to suffer damages including lost profits, loss of goodwill, loss of control over its brand identity, diversion of internet traffic and customers, and costs of corrective advertising and other remedial measures necessitated by BTCM's false designations and misrepresentations.

98. Based on BTCM's willful and intentional violations of 15 U.S.C. § 1125(a), Breaktime is entitled to injunctive relief under 15 U.S.C. § 1116, and to recover: (1) BTCM's profits; (2) all damages sustained by Breaktime; (3) the costs of this action; and (4) enhanced damages of up to three times actual damages based on BTCM's willful conduct pursuant to 15 U.S.C. § 1117(a). Breaktime further seeks an award of reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(a), 1116, and 1117 based on the exceptional nature of this case.

## COUNT IV
## Texas Common Law Trademark Infringement

99. Breaktime incorporates by reference as if fully restated herein the allegations of the preceding paragraphs.

100. Breaktime has continuously used the BREAKTIME® Marks in commerce in Texas since at least 2017, thereby acquiring valid and enforceable common law trademark rights in the BREAKTIME® Marks in Texas. Breaktime's common law rights predate any use of the

BRAKETIME Marks or the "Breaktime Corner Market" trade name by BTCM in a manner likely to cause consumer confusion.

101. BTCM's unauthorized use of colorable imitations of the BREAKTIME® Marks, its direct reproduction of the BREAKTIME® composite mark at the Bellaire location, and its deliberate use of Breaktime's exact registered spelling in the trade name "Breaktime Corner Market" online, as alleged herein, each independently and collectively constitute trademark infringement under Texas common law.

102. The elements of common law trademark infringement under Texas law are the same as those under the Lanham Act. *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017) (citing *Hot-Hed, Inc. v. Safehouse Habitats (Scotland), Ltd.*, 333 S.W.3d 719, 730 (Tex. App. — Houston [1st Dist.] 2010, pet. denied)). Breaktime therefore incorporates by reference all allegations establishing likelihood of confusion under the Lanham Act as set forth in the preceding counts and factual background, which equally establish BTCM's liability under Texas common law.

103. BTCM's infringing conduct has caused and continues to cause confusion among consumers as to the source, origin, affiliation, sponsorship, or approval of BTCM's goods and services, thereby damaging Breaktime's goodwill, reputation, and business in Texas.

104. BTCM's infringing conduct has caused and, unless enjoined, will continue to cause irreparable harm to Breaktime for which there is no adequate remedy at law.

105. BTCM's Texas common law trademark infringement was committed knowingly, intentionally, and with malice within the meaning of Texas Civil Practice and Remedies Code Chapter 41. BTCM undertook these acts with specific intent to cause substantial injury and harm to Breaktime's business reputation, customer relationships, and control over its marks, or at a

minimum with conscious indifference to those rights. Breaktime has suffered and will continue to suffer damages other than nominal damages, including damage to goodwill, loss of control over reputation, corrective-advertising expense, diversion of internet traffic, and other compensatory harm. *See* Tex. Civ. Prac. & Rem. Code § 41.004(a); *Streamline Prod. Sys.*, 851 F.3d at 463.

106. Breaktime seeks exemplary damages on its Texas common law trademark infringement claims in an amount to be determined by the jury, subject to the limitations of Tex. Civ. Prac. & Rem. Code § 41.008, based on BTCM's malicious and intentional conduct as set forth herein.

107. Breaktime is entitled to injunctive relief, actual damages, and exemplary damages under Texas law.

**COUNT V**
**Texas Common Law Unfair Competition**

108. Breaktime incorporates by reference as if fully restated herein the allegations of the preceding paragraphs.

109. BTCM's conduct — including its use of colorable imitations of the BREAKTIME® Marks across its 300+ store network, its direct reproduction and passing off of the BREAKTIME® composite mark at the Bellaire location, and its deliberate use of Breaktime's exact registered spelling in the trade name "Breaktime Corner Market" on its website and social media to divert internet traffic — constitutes unfair competition under Texas common law.

110. BTCM's unfair competition includes, without limitation:

a Passing off its Bellaire location as affiliated with or operated by Breaktime by displaying Breaktime's actual registered composite mark — including its distinctive green-and-blue color scheme — on its signage;

b Deliberate market saturation with confusingly similar marks after actual notice of Breaktime's prior rights through the cease-and-desist letter and USPTO rejection;

c Use of the trade name "Breaktime Corner Market" — deliberately adopting Breaktime's exact registered spelling rather than BTCM's own "BrakeTime" variant — on BTCM's website and certain social media to divert consumers and internet traffic from Breaktime in bad faith; and

d Systematically trading on the goodwill, reputation, and consumer recognition that Breaktime has built in the BREAKTIME® Marks since 2017.

111. The analysis of Breaktime's federal claims controls disposition of its Texas common law unfair competition claim. Breaktime therefore incorporates by reference all allegations establishing likelihood of confusion under the Lanham Act as set forth in the preceding counts and factual background, which equally establish BTCM's liability under Texas common law unfair competition.

112. BTCM's conduct has caused and, unless enjoined, will continue to cause substantial harm to Breaktime, including lost customers, lost revenue, damage to goodwill, loss of control over Breaktime's brand identity, and diversion of internet traffic and online consumers.

113. BTCM's Texas common law unfair competition was committed knowingly, intentionally, and with malice within the meaning of Texas Civil Practice and Remedies Code Chapter 41. BTCM's conduct was undertaken with specific intent to cause substantial injury and harm to Breaktime, or at a minimum with conscious indifference to Breaktime's rights. Breaktime realleges the Chapter 41 factual allegations set forth in Count IV and incorporates them herein by reference.

114. Breaktime seeks exemplary damages on its Texas common law unfair competition claims in an amount to be determined by the jury, subject to the limitations of Tex. Civ. Prac. & Rem. Code § 41.008, based on BTCM's malicious and intentional conduct as set forth herein.

115. Breaktime is entitled to injunctive relief, actual damages, and exemplary damages under Texas law.

**JURY DEMAND**

116. Breaktime hereby demands a trial by jury on all claims and issues so triable.

**PRAYER FOR RELIEF**

Breaktime respectfully requests that the Court enter judgment in its favor and against BTCM, jointly and severally, as follows:

A. Preliminary and/or permanent injunctive relief prohibiting further infringement of the BREAKTIME® Marks, including:

i. a prohibition on any further marketing, distribution, or use of any materials or media containing "Breaktime," "BrakeTime," "Breaktime Corner Market," “BrakeTime Corner Market” or any other confusingly similar designation in association with retail store services featuring convenience store items and gasoline;

ii. a specific order requiring BTCM to immediately remove all reproductions of the BREAKTIME® composite mark from its location at 5910 West Loop South, Bellaire, TX 77401, and from any other location where BTCM has reproduced Breaktime's actual registered mark;

iii. a specific order requiring BTCM to immediately cease all use of the trade name "Breaktime Corner Market" — or any other designation incorporating Breaktime's exact registered spelling — on its website, social media platforms, and all other digital or consumer-facing materials; and

iv. an order directing BTCM to destroy all materials or media in its possession, custody, or control — or in the control of any of its agents, officers, or affiliates — that violate Breaktime's rights.

B. An award of all damages sustained by Breaktime as a result of BTCM's infringement and unfair competition, including but not limited to:

i. lost profits and revenue diverted from Breaktime to BTCM as a result of consumer confusion;

ii. damage to Breaktime's goodwill and business reputation;

iii. loss of control over Breaktime's brand identity and registered marks; and

iv. the costs of corrective advertising of a duration and scope sufficient to remedy, to the extent possible, the harm caused by BTCM's infringement.

C. An award of all profits received by BTCM in connection with its infringement of the BREAKTIME® Marks and its unfair competition, including profits attributable to BTCM's infringing use of the BRAKETIME Marks across its store network, profits derived from the Bellaire location, and profits attributable to BTCM's online use of the "Breaktime Corner Market" trade name.

D. An award of enhanced damages of up to three times the amount of actual damages pursuant to 15 U.S.C. § 1117(a), based on BTCM's willful and intentional infringement.

E. To the extent BTCM's direct reproduction of Breaktime's registered composite mark at the Bellaire location constitutes use of a counterfeit mark as defined under 15 U.S.C. § 1116(d), an award of mandatory treble damages pursuant to 15 U.S.C. § 1117(b), together with prejudgment interest thereon.

F. An award of exemplary damages pursuant to Chapter 41 of the Texas Civil Practice and Remedies Code, based on BTCM's malicious and intentional conduct as alleged in Counts IV and V, in an amount to be determined by the jury subject to the limitations of Tex. Civ. Prac. & Rem. Code § 41.008.

G. An award of Breaktime's reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and/or other applicable law, based on the exceptional nature of this case as demonstrated by BTCM's willful, knowing, and malicious infringement.

H. An award of all costs of this civil action.

I. An award of prejudgment and post-judgment interest on all monetary awards to the extent permitted by law.

J. All other relief, in Breaktime's favor, that the Court deems just and proper.

Date: November 3, 2026

Respectfully submitted,

**SPENCER FANE LLP**

By: ______________________

C. Davis Bradford
Texas Bar No. 24064939
dbradford@spencerfane.com
Telephone: 713-212-2634
Jeffrey J. Phillips
Texas Bar No. 24037279
jphillips@spencerfane.com
Frederick T. Johnson
Texas Bar No. 00785429
fjohnson@spencerfane.com
3040 Post Oak Blvd., Suite 1400
Houston, Texas 77056
Telephone: 713-552-1234

***Attorney for Plaintiff Breaktime Houston LLC***